UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL JOSEPH SMITH, IV, | ) | |
| HEATHER SMITH n/o/k for | ) | |
| MICHAEL SMITH, deceased, | ) | |
| | ) | |
| Plaintiffs | ) | No. 3:11-CV-0368 |
| | ) | Judge Nixon/Brown |
| v. | ) | **Jury Demand** |
| | ) | |
| CHAD BARTH, Officer; | ) | |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE & DAVIDSON | ) | |
| COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendants | ) | |

___

**INITIAL CASE MANAGEMENT ORDER**
___

Pursuant to Local Rule 16.01(d)(2), the following Initial Case Management Plan is **adopted.**

**I.     Jurisdiction and Venue:**  The District Court for the Middle District of Tennessee has jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution and/or laws of the United States.  Jurisdiction is also proper pursuant to 28 U.S.C. § 1332, as (1) living plaintiffs are citizens of a State other than Tennessee, whereas (2) defendant Barth is a citizen of Tennessee, residing in Davidson County, and defendant Metropolitan Government is a government entity in Davidson County, Tennessee, and (3) the amount in controversy exceeds $75,000.  Additionally,

1

the primary events upon which this lawsuit is based occurred in Davidson County, Tennessee, so that venue is proper.

II. Parties' Theories of the case:

a. Plaintiff's theory

In April 2010 the plaintiff was a law office runner for Document Technologies Inc. Smith was assigned to the office of Wyatt, Tarant & Combs, Gilbert & Milom (hereinafter referred to as "the firm") in Nashville. The plaintiff was a good and reliable employee, and was well-regarded by his supervisor and other employees at the firm.

The plaintiff was given a credit card in the law firm's name and which was provided to the plaintiff so that the plaintiff could purchase supplies for the firm. There were no written or verbal restrictions on the use of the credit card given to the plaintiff. He was routinely asked to purchase personal items for staff, and he was permitted to purchase a cell phone on the firm card which was used for firm business.

On or about April 25, 2010, the plaintiff was undergoing some personal problems, and took a few days off, utilizing the firm's credit card to purchase a ticket to Miami, Florida. On Tuesday, April 27, 2010, the plaintiff was contacted by employees of the firm, and told he needed to return to Nashville with the credit card.

On Wednesday, April 28, 2010, the plaintiff returned to Nashville and was driving to the law firm's office with the intention of returning the firm's credit card and paying personally for the charges made on the firm credit card. When the plaintiff arrived at the firm's parking garage, he was confronted by Officer Barth. Officer Barth

apparently was responding to a report of a credit card theft. Officer Barth immediately approached the plaintiff and told him to get out of the car, that he needed to speak with the plaintiff. The plaintiff exited his vehicle in compliance, and Officer Barth said the plaintiff was under arrest. . The plaintiff said "for what?" Officer Barth replied "I don't have to tell you." The plaintiff was not advised what he was under arrest for. The plaintiff had committed no crime, and had threatened no one. There were no exigent circumstances warranting the plaintiff's arrest or detention.

The plaintiff re-entered his car, started the car, and began to pull out of the parking space to leave. Officer Barth pulled out his weapon and pointed it at the plaintiff, causing him to fear for his life. As the plaintiff pulled his car out to leave, Barth fired several times at the plaintiff's car. A bullet struck him in the mid back area, rendering him a quadraplaegic and he ultimately died. The plaintiff was arrested and charged with aggravated assault and was held in the special needs facility with the Tennessee Department of Correction. He requires constant medical care. He was subsequently indicted for attempted first degree murder and credit card fraud. The plaintiff eventually died. He has incurred medical expenses and lost his life as a result of the shooting

Defendant Chad Barth's careless and wanton use of his weapon to fire on the plaintiff – who was suspected of no serious crime – violated the plaintiff's civil rights protected under 42 U.S.C. 1983, and the Civil Rights Act of 1962, and constituted deliberate indifference to the rights and privileges afforded citizens of this country.

The defendant Chad Barth was either trained improperly, or ignored his training when exercised deadly force to attempt to arrest the plaintiff. The actions of defendant Chad Barth violated official policies regarding the use of deadly force. The actions of the defendant Barth in using deadly force, in ignoring his own training and in violating the Police Department's own policies, constitutes deliberate indifference, and was the direct and proximate cause of the injuries suffered by the plaintiff.

Defendant Metropolitan Nashville Davidson County Government, as an additional claim, is liable for the violation of the civil rights of the plaintiff by failing to properly train the defendant Barth in the use of deadly force, or in initiating a deadly force policy which is ignored by police officers or in violation of persons' civil rights.

**b.     Defendant Metropolitan Government's Theory of the Case**

No conduct alleged in the Complaint rises to the level of a constitutional violation. Further, no custom, policy, or practice of the Metropolitan Government was the moving force behind any alleged injury in this case. The Metropolitan Government has not been deliberately indifferent in failing to properly train its employees, and Plaintiff sets forth no well-pleaded factual allegations to the contrary. Likewise, the Metropolitan Government's use of force police is constitutionally sound.

**c.     Defendant Chad Barth's Theory of the Case**

Chad Barth's decisive action protected innocent civilians, and himself, from the significant risk of serious bodily injury and death. Michael Smith's criminal and dangerous actions required that Chad Barth utilize deadly force.

Chad Barth is entitled to qualified immunity for his split second yet objectively reasonable decision to fire upon Michael Smith. He did not violate any constitutional right of Michael Smith. Michael Smith did not possess the constitutional rights to refuse arrest, to drag a police officer by his car door, and to attempt to flee at a high rate of speed in a public parking lot where multiple innocent civilians were present and placed in danger. No clearly established constitutional right of Michael Smith was violated. Chad Barth acted in an objectively reasonable manner under the totality of the circumstances.

### III. Major Issues in Dispute

1. Is Chad Barth entitled to qualified immunity from suit? This involves two sub-issues:

  a. Did Michael Smith have a the constitutional right not to be shot, when he refused to be arrested and instead fled from arrest in a motor vehicle in a public parking garage, and in so doing knocked Chad Barth to the ground with his car door?

  b. If Michael Smith had such a constitutional right not to be shot, was such right clearly established?

2. If Chad Barth does not have qualified immunity, did he nonetheless act in an objectively reasonable manner in light of the totality of the circumstances when he shot Michael Smith?

3. IF Chad Barth's conduct in fact violated a constitutional right of Michael Smith, was his unconstitutional conduct the product of a custom, practice or policy of defendant Metropolitan Government, such that the government entity can be held liable pursuant to the *Monnell* doctrine?

**IV. Stipulations**

The parties anticipate that relevant business records will be stipulated to.

**V. Schedule of Pretrial Proceedings:**

**a. Bifurcation of Discovery Process**

So as to limit potentially unnecessary expenses, discovery will be bifurcated so that liability discovery can be promptly completed. Damages discovery will only commence should this case survive summary judgment and proceed towards trial.

**1. Rule 26(a) disclosures regarding liability**

In the recently dismissed State case, Rule 26(a) disclosures were completed. Any supplemental disclosures, including disclosure of additional experts, regarding liability, shall be made no later than **June 27, 2014**.

**2. Deposition of Fact and Expert Witnesses**

Many of the fact witnesses were deposed as part of the related State case, however a few fact witnesses need to be deposed. Expert witnesses were not deposed as part of the related State case. Depositions of the experts and any other witnesses regarding liability shall be completed no later than **September 26, 2014**.

### 3. Dispositive Motions

Dispositive motions shall be filed no later than **November 17, 2014**. Responses to dispositive motions shall be filed within **28 days** after service. Briefs shall not exceed **25 pages** without leave of Court. Optional replies, limited to **five pages**, shall be filed within **14 days** after service of the response. If dispositive motions are filed early, the response and reply dates are moved up accordingly.

### b. Scheduling following dispositive motions

Should a portion of the case survive dispositive motions, the Magistrate Judge will promptly set a scheduling conference to set a date for completion of liability discovery and set a trial date.

### c. Requests for admission

The parties may serve appropriate requests for admission throughout the discovery process.

### VI. Disputes regarding discovery and subsequent case management conferences

Prior to the filing of any motions related to discovery disputes, the aggrieved party shall take the initiative to schedule a telephone conference with the Magistrate Judge. It is the responsibility of the aggrieved party to check with counsel for the other parties and determine their availability.

Any party may move, if the conditions warrant, for a new case management conference. In such case, the moving party shall consult with counsel for the other parties to determine their availability.

**VII.   Alternative Dispute Resolution**

Alternative dispute resolution does not seem appropriate at this time. The parties may revisit this issue following resolution of dispositive motions.

It is so **ORDERED**.

                                               /s/   Joe B. Brown
                                               Joe Brown
                                               United States Magistrate Judge