UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL ANTHONY DAVIS and <br> JANICE CARVER DAVIS, <br>     Plaintiffs, <br> v. <br> SAMUNKA PATEL, PINAL PATEL, and <br> MANISH KUMAR PATEL, individually <br> and d/b/a REST HAVEN MOTEL, <br>     Defendants. | Civil No. 3:14-cv-764 <br> Judge Aleta A. Trauger |

## MEMORANDUM

The defendants have filed a Renewed Motion for Summary Judgment (Docket No. 55), to which the plaintiffs have filed a Response (Docket No. 62), and the defendants have filed a Reply (Docket No. 70). For the following reasons, the defendants' Renewed Motion for Summary Judgment will be granted.

## BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs, Michael Anthony Davis and Janice Carver Davis, are a married couple. From August of 2012 to February of 2014, they lived at the Rest Haven Motel in Goodlettsville, Tennessee (the "Motel"), which is owned and operated by the defendants. In September of 2012, the plaintiffs agreed to perform housekeeping, maintenance, and front desk duties for the Motel on an as-needed basis in exchange for a reduction in their rent. The plaintiffs cleaned the Motel's rooms and its parking lot; assisted with certain facility maintenance tasks; and monitored the front desk, where they registered guests and accepted payment for rented rooms.

On March 17, 2014, the plaintiffs filed an action against the defendants, alleging that they

1

had violated the Fair Labor Standards Act ("FLSA"). (Docket No. 1.) Specifically, the plaintiffs allege that they were "employed" by the defendants to "operate, clean and maintain" the Motel until the plaintiffs "voluntarily terminated their employment" in early March of 2014. (*Id.* ¶¶ 7–8.) Furthermore, the plaintiffs allege that they "consistently worked more than fourteen hours per day, seven days per week" and "more than 40 hours per workweek" but were never paid minimum wage or overtime pay as required by the FLSA. (*Id.* ¶¶ 4–12.) The plaintiffs seek unpaid wages, liquidated damages pursuant to § 216(b) of the FLSA, and attorney's fees and costs. (*Id.* at p. 4.)

I. **The Defendants' Initial Motion for Summary Judgment**

In May of 2014, two months after the plaintiffs filed suit, the parties attended an initial case management conference before Magistrate Judge Brown. After the conference, Judge Brown entered an Initial Case Management Order setting an expedited schedule for the defendants to file a summary judgment motion based on their assertion that the plaintiffs' jobs at the Motel are not governed by the minimum wage and overtime protections of the FLSA. (Docket No. 11 ¶ 5.) Judge Brown determined that "the most efficient and economical way to proceed" was to allow the parties to engage in limited discovery and summary judgment briefing related to "the [FLSA] coverage issue only." (*Id.*) Over the following months, the parties undertook limited, written discovery on this issue, including written discovery relating to the Motel's gross revenue, its clientele, and the nature and extent of the plaintiffs' housekeeping, maintenance, and front desk duties. Neither party took depositions during this time.

On October 22, 2014, the defendants filed a Motion for Summary Judgment (Docket No. 20), arguing that the plaintiffs were not protected by the FLSA because they could not establish either enterprise coverage, whereby the FLSA protects employees of an "enterprise engaged in

2

commerce," or individual coverage, whereby the FLSA protects employees who, themselves, "engage in commerce or in the production of goods for commerce," 29 U.S.C. §§ 206, 207. Specifically, the defendants argued that (1) the Motel is not an "enterprise" that is covered by the FLSA because its annual gross volume of sales or business does not equal $500,000 or more; and (2) the plaintiffs are not individuals who are covered by the FLSA because, in performing housekeeping, maintenance, and front desk duties for a local business, they were not engaged in interstate commerce or in the production of goods for interstate commerce. (Docket Nos. 20, 21.)

On November 26, 2014, the plaintiffs filed a Response in Opposition to the defendants' motion. (Docket No. 34.) The plaintiffs did not dispute the defendants' argument that the Motel was not an "enterprise" within the meaning of the FLSA, but they did argue that they were covered as individuals because they "engage[d] in commerce" when they worked at the front desk of the Motel and, thereby, "assisted" interstate travelers. (*Id.* at p. 2.) The only evidence that the plaintiffs submitted in support of this argument were their own declarations providing a general description of the work they performed for the defendants. (Docket Nos. 35, 36.) Both declarations make the following statement:

> While I worked at the Motel, we frequently and regularly served guests from Florida, Illinois, Kentucky, New Mexico, Alabama, Michigan, South Dakota, North Carolina, Georgia, Wisconsin, Arkansas, Oklahoma, Colorado and Indiana. I also observed numerous out-of-state license plates on cars in the motel parking lot. . . . [My spouse] and I frequently checked in these guests, talked with them on the telephone and assisted them by helping them with directions to and around the Motel and arranging travel plans, including out of state travel, and processed credit and debit card transactions for guests. I also accepted mail and packages for the Motel delivered by the United States Post Office, Federal Express and United Parcel Service.

(Docket Nos. 35, 36.)

On March 12, 2015, Judge Brown issued a Report and Recommendation ("R&R")

3

concluding that the plaintiffs were entitled to neither enterprise nor individual coverage under the FLSA and recommending that the defendants' Motion for Summary Judgment be granted. (Docket No. 43.) First, the R&R noted that undisputed evidence established that the Motel's gross annual revenues were less than $500,000 per year and that, as a result, the Motel is not a covered enterprise under the FLSA. (*Id.* at p. 4.) Second, the R&R held that the plaintiffs did not engage in the "production of goods for commerce" because any goods the plaintiffs handled in the course of their employment "had already reached their ultimate consumer (the Motel) and d[id] not[,] [therefore,] qualify as goods for commerce under the FLSA." (*Id.* at p. 5.) Finally, the R&R concluded that the plaintiffs themselves were not "engaged in commerce" because their work was primarily local in nature; their interactions with a relatively small number of out-of-state guests did not "constitute a substantial, regular, continued, or recurrent part of [the] [p]laintiffs' duties that would establish individual coverage under the FLSA;" and the plaintiffs failed to demonstrate that, in processing credit card transactions, they corresponded with "out-of-state-vendors," or that such an interaction "constituted a substantial part of their duties." (*Id.* at pp. 9–12.)

The plaintiffs objected to the R&R, arguing that Judge Brown "erred by essentially holding that there is some minimum threshold time that an employee must spend on some specific activity to be engaged in interstate commerce." (Docket No. 45, p. 5.) The district judge then assigned to this case agreed that Judge Brown had erred, but for a different reason than that advanced by the plaintiffs.[1] The court concluded that "the statements contained in [the]

---

[1] As discussed more fully below, the appropriate test for whether an employee is "engaged in commerce" for purposes of the FLSA is whether the employee works for an instrumentality of interstate commerce or regularly and recurrently uses instrumentalities of interstate commerce in the course of his work.

4

[p]laintiffs' declarations (Docket Entry Nos. 35 and 36) create a dispute as to the frequency and extent of [their] front desk duties" and, thus, "a genuine issue of material fact exists as to whether [those] duties qualify them as engaged in commerce under the FLSA." (Docket No. 47.) The court then adopted only the portion of the R&R concluding that the plaintiffs "are not entitled to enterprise coverage under the FLSA, do not produce goods for interstate commerce, and are not engaged in commerce when performing housekeeping and maintenance duties." (*Id.*) Accordingly, the court denied the defendants' motion for summary judgment.

## II. The Defendants' Renewed Motion for Summary Judgment

On March 4, 2016, in accordance with the court's November 13, 2015 Scheduling Order, the defendants filed a Renewed Motion for Summary Judgment (Docket No. 55), accompanied by a Memorandum in Support (Docket No. 56), a Statement of Undisputed Material Facts (Docket No. 57), and excerpts from the plaintiffs' depositions (*id.*). In this pending motion, the defendants again seek dismissal of the plaintiffs' claims on the basis that the plaintiffs are not covered as individual employees under the FLSA. (Docket No. 55.) The defendants assert that, following the court's denial of their initial Motion for Summary Judgment, they have deposed the plaintiffs, and the deposition testimony reveals new, material information regarding the extent and frequency of the plaintiffs' front desk duties. (*Id.* at p. 2.) The defendants contend that, based on this testimony, it would be impossible for a reasonable finder of fact to conclude that, in working at the front desk, the plaintiffs "engaged in commerce" within the meaning of the FLSA. (Docket No. 56, p. 7.) Specifically, the defendants argue that the plaintiffs' own testimony regarding their front desk duties demonstrates that they did not (1) work for an instrumentality of interstate commerce or (2) regularly and recurrently use instrumentalities of interstate commerce in their work. (*Id.* at pp. 9–16.) According to the defendants, the FLSA is

5

thereby inapplicable to the plaintiffs' claims, and this action should be dismissed.

On April 15, 2016, the plaintiffs filed a Response in Opposition to the defendants' renewed motion (Docket No. 62), accompanied by a Response to the defendants' Statement of Undisputed Material Facts and Statement of Additional Facts (Docket No. 63) and the complete transcripts for the depositions of Mr. Davis, Mrs. Davis, and the defendant Samunka Patel (Docket Nos. 64–66). In their Response, the plaintiffs argue that their deposition testimony does not support the defendants' argument for summary judgment but, instead, "only strengthened the[] record establishing that there are genuine factual disputes for trial" regarding individual coverage under the FLSA. (Docket No. 62, p. 1.) According to the plaintiffs, their deposition testimony confirmed that, while working at the Motel's front desk, they "touched and were engaged in commerce" because they serviced and assisted interstate travelers who stayed at the Motel. (*Id.* at pp. 6–7.) The plaintiffs argue, therefore, that the deposition testimony demonstrates a genuine issue of material fact as to whether they were "engaged in commerce" while working at the Motel's front desk, and the defendants' Renewed Motion for Summary Judgment should be denied.[2]

On May 2, 2016, the defendants filed a Reply in support of their motion, arguing

---

[2] The only issue left open after the court's prior ruling (Docket No. 47) – and the only issue raised in the defendants' motion – is whether the plaintiffs' front desk duties qualify them for individual coverage under the FLSA. The court intends to address only this narrow legal issue, but it is worth noting that, in their Response, the plaintiffs apparently attempt to resurrect their argument that they are entitled to enterprise coverage (Docket No. 62, p. 4) despite this court's already having ruled that they are not. The plaintiffs indicate in their briefing that, for at least one relevant year, the Motel's gross annual revenues, as calculated from a handwritten ledger, is three times the gross income reported to the IRS. (Docket No. 62, p. 4.) The plaintiffs never explicitly advance any argument based on this assertion, however, and there is no indication that the handwritten ledger actually shows gross revenues in an amount sufficient to trigger enterprise coverage under the FLSA or that the court's prior ruling should be changed based on new evidence.

6

primarily that, regardless of how many motel guests were from out-of-state, that fact "does not alter the local quality of [the] [p]laintiffs' work for the Motel" and, as the plaintiffs themselves acknowledged, "the character of the employee's activities is determinative [in an FLSA coverage determination], not the nature of the employer's business." (Docket No. 70, p. 1 (quoting Docket No. 62, p. 5 (quoting *Overstreet v. N. Shore Corp.*, 318 U.S. 125, 132 (1943))).) The defendants further argue that the plaintiffs' position "ignore[s] well-settled case law" establishing that employees in the hospitality industry are not covered by the FLSA "simply because [their] guests ha[ve] arrived from out-of-state." (*Id.* at p. 2.)

The court must, therefore, determine whether the plaintiffs' deposition testimony – containing evidence concerning the frequency and extent of the plaintiffs' front desk duties that was not available to the court or the parties when the court denied the defendants' initial motion –demonstrates genuine disputes of material fact as to whether the plaintiffs "engaged in commerce" for purposes of the FLSA.

## **FACTS**[3]

The Motel is an unincorporated, sole proprietorship that has been owned and operated by the Patel family for over twenty years. It is located approximately one mile from Interstate 65 and has thirteen rooms and one mobile home available for rent. Of the thirteen rooms, nine are rented by the week, two are rented by the day, and two are rented by the hour. The Motel

---

[3] Unless otherwise noted, the facts recounted in this section are drawn primarily from (1) the defendants' Statement of Undisputed Material Facts (Docket No. 57) and the plaintiffs' response thereto (Docket No. 63), and (2) the plaintiffs' Additional Disputed Facts for Trial (*id.*) and the defendants' response thereto (Docket No. 71). This section also contains facts from the defendants' Renewed Motion for Summary Judgment and memorandum of law in support thereof (Docket Nos. 55, 56), the plaintiffs' Response in opposition (Docket No. 62), and the defendants' Reply (Docket No. 70) that are not refuted or contradicted by the opposing party or the record. Where there is a genuine dispute of fact, the court will construe the fact in the light most favorable to the plaintiffs as the non-moving party.

7

maintains a handwritten ledger that contains a list of the rooms being rented each day, the name of the guest renting each room, and how much the guest is paying for the night.  The Motel also maintains a set of registration cards, which are filled out by each guest who rents a room by the week or day with the guest's name, address, license plate number, and the total amount paid by the guest to the Hotel.  The Motel does not, however, maintain any records documenting the identity of guests who rent rooms by the hour.  Hourly guests are not asked to fill out registration cards or provide identification and, often, are recorded in the Motel's daily ledger using a fictitious name.  Because of these differences in recordkeeping between the different types of guests, the parties strenuously disagree over the exact number or percentage of guests who traveled to the Motel from out of state, but they agree that "[m]ost" of the Motel's guests were from Tennessee.  (Docket No. 63 ¶ 3 (quoting Docket No. 57-1 (Depo. M. Davis), 63:4–8).)[4]

      The plaintiffs lived and worked at the Motel for roughly 18 months, during which time they performed housekeeping, maintenance, and front desk duties in exchange for a reduction in their rent.  The court has already ruled that the plaintiffs' housekeeping and maintenance duties do not qualify them for individual coverage under the FLSA, so the court will focus only on the

---

[4] Despite Mr. Davis' testimony that "[m]ost" of the Motel's guests were from Tennessee (Docket No. 57-1 (Depo. M. Davis), 63:4–8), the plaintiffs attempt to dispute this fact by arguing that the defendants do not "retain records (*i.e.*, registration cards) from the patrons who rent their rooms by the hour" or "ask for identification from hourly renters." (Docket No. 63 ¶ 3 (quoting Docket No. 66 (Depo. S. Patel), 28:4–18, 32:15–33:5).)  The plaintiffs further argue that, because the defendants did not create records for hourly renters, "for a significant number of patrons, it is not known where they are from."  (*Id.*)  The plaintiffs do not, however, offer any evidence suggesting that (1) a "significant number" of guests rented the hourly rooms or (2) hourly guests were more likely than weekly and daily guests to be from out of state.  Nor do the plaintiffs offer any evidence suggesting that Mr. Davis's own testimony that "[m]ost" of the Motel's guests are from Tennessee is unreliable or refers only to weekly or daily, rather than hourly, guests.  The plaintiffs thereby attempt to create a dispute of fact based on mere speculation, which is not a *genuine* dispute of fact.

8

plaintiffs' front desk duties as originally described in declarations submitted in opposition to the defendants' initial Motion for Summary Judgment and as later clarified in the plaintiffs' depositions. While working at the front desk, the plaintiffs were primarily responsible for checking guests into their rooms, providing them with their keys, and directing them to their rooms. In addition to these duties, the plaintiffs contend that they also (1) answered the telephone and received mail and packages; (2) collected payment from guests, either in cash or by credit card; and (3) assisted guests with directions and "travel plans." (Docket No. 35 (Decl. J. Davis) ¶ 2; Docket No. 36 (Decl. M. Davis) ¶ 2.)

With regard to answering the telephone and receiving mail, the plaintiffs initially stated in their declarations that they "talked with [guests] on the telephone" and "accepted mail and packages for the Motel delivered by the United States Post Office, Federal Express and United Parcel Service." (Docket No. 35 ¶ 2; Docket No. 36 ¶ 2.) The plaintiffs later confirmed in their depositions that they answered the telephone at the front desk and connected calls to guests' rooms. (Docket No. 56-1 (Depo. M. Davis), 39:1–9; Docket No. 56-2 (Depo. J. Davis), 19:13–22.) The plaintiffs did not, however, clarify in their depositions whether they were aware of any call that they answered originating outside of Tennessee, and nothing in the record establishes that the Motel received calls from out-of-state. Furthermore, it does not appear that either of the plaintiffs ever initiated a telephone call – to someone in Tennessee or outside of Tennessee – on the Motel's behalf. (Docket No. 63 ¶ 5 (citing Docket No. 56-1, 39:1–9; Docket No. 56-2, 19:13–22; Docket No. 23 (Decl. S. Patel) ¶ 22).)[5] The plaintiffs also clarified in their

---

[5] The plaintiffs dispute the defendants' assertion that they never initiated any phone calls on behalf of the Motel by arguing that "[b]oth Mr. Davis and Ms. Davis testified that they answered telephones for the hotel while working at the front desk." (Docket No. 63 ¶ 5 (citing Docket No. 56-1, 34:20–23, 39:1–9; Docket No. 56-2, 19:13–22).) While the plaintiffs' cited support does demonstrate that the plaintiffs *answered* the telephone while working the front desk

9

depositions that the Motel does not allow guests to book or reserve rooms in advance, so they never made or processed reservations for guests over the phone. (Docket No. 56-1, 39:10–18.) Finally, the plaintiffs confirmed that they accepted mail and packages for the Motel, which they would put in the defendants' office, and they further testified that they never sent any mail or packages on behalf of the Motel. (*Id.* at 39:1–9; Docket No. 56-2, 19:23–20:7.) The plaintiffs did not clarify in their depositions whether any of the mail or packages that they accepted on behalf of the Motel originated outside of Tennessee, and nothing in the record establishes that the Motel received mail and packages sent by out-of-state persons or entities.

With regard to collecting payments from guests, the plaintiffs stated in their declarations only that they "processed credit and debit card transactions for guests." (Docket No. 35 ¶ 2; Docket No. 36 ¶ 2.) The plaintiffs confirmed in their depositions that they processed credit card payments for guests but, according to both Mr. and Mrs. Davis, Mr. Davis generally processed only one or two credit card payments per day or, at most, four or five per week. (Docket No. 56-1, 36:7–13; Docket No. 56-2, 21:1–17.) Mrs. Davis testified that she processed only one credit card transaction in the entire time that she worked at the front desk. (Docket No. 65 (Depo. J. Davis), 20:8–13.) All other guests – who the plaintiffs agreed constituted "[m]ost" of the guests who stayed at the Motel – paid for their rooms in cash. In their depositions, the plaintiffs failed to clarify whether any of the credit card transactions that they processed involved out-of-state guests, processors, or banks, and the record contains no additional evidence regarding the nature of these credit card transactions.

---

(Docket No. 56-1, 34:20–23, 39:1–9 (testifying that he "answered the phones" and "connect[ed] them to the rooms" if the caller asked); Docket No. 56-2, 19:13–22 (testifying that she "answered the phone")), nothing in that cited support, or in the record as a whole, suggests that the plaintiffs ever *initiated* telephone calls while working at the front desk.

10

Finally, the plaintiffs stated in their declarations that they "assisted [guests] by helping them with directions to and around the Motel and arrang[ed] travel plans [for guests], including out of state travel." (Docket No. 35 ¶ 2; Docket No. 36 ¶ 2.) In their depositions, however, both Mr. and Mrs. Davis agreed that they didn't "arrange travel plans" for any of the Motel's guests. (Docket No. 56-1, 65:16–18 ("Q: So you didn't really arrange any travel plans? A: No."); Docket No. 65, 46:14–21 ("Q: Did you arrange travel plans for anyone? A: No, sir. Q: Arrange travel plans including out of state travel. You didn't make any travel plans for anyone to travel out of state, did you? A: No, sir.").)[6] Furthermore, it is undisputed that, in the course of performing tasks for the Motel, the plaintiffs never assisted Motel guests in making reservations at another motel or hotel, obtaining a rental car, booking a flight, or making flight arrangements or restaurant reservations.

While the plaintiffs admitted in their depositions that they did not "*arrange* travel plans" for guests, they also testified that they assisted guests with travel directions, directions to the interstate, and directions to out-of-state tourist attractions. For example, the plaintiffs testified that they "show[ed] [guests] where the stores were," such as grocery stores, pharmacies, and

---

[6] The defendants argue that, based on the plaintiffs' deposition testimony that they did not "arrange travel plans," the plaintiffs' prior declarations stating that they *did* "arrange travel plans" contain "material false statements with regards to their performance of front desk activities for the Motel." (Docket No. 55, p. 2.) The plaintiffs never respond to this argument but, rather, continue to insist in their Response that they "arrang[ed] travel plans, including out of state travel," for guests. (Docket No. 62, p. 3.) The parties' disagreement appears to hinge on what constitutes "travel plans," with the defendants defining the term to include reservations for lodging, transportation, and other services – which the plaintiffs undisputedly *did not* provide to guests – and the plaintiffs defining the term to include only travel directions – which the plaintiffs *did* provide. Because this argument appears to be one that is based on semantics, the court cannot find that the plaintiffs' prior declarations are materially false. Nevertheless, the court finds that it is undisputed that the plaintiffs never arranged travel plans, as that term is defined by the defendants.

11

restaurants, and told guests how to get to nearby Nashville.  (Docket No. 56-1, 64:11–65:7; Docket  No. 56-2, 21:23–22:8.)  The plaintiffs also testified that, though they never gave directions to an airport, they did direct guests to the "bus line," though nothing in the record clarifies whether this bus line provided service to out-of-state locations.  (Docket No. 56-1, 64:22–65:1.)  Additionally, Mrs. Davis testified that, "[w]henever somebody was from out of town and would ask [her]," she would give them directions on how to get to locations out of state, which usually consisted of nothing more than directions on how to get to Interstate 65, roughly a mile from the Motel.  (Docket No. 65, 52:23–53:24.)   Mrs. Davis could not, however, remember how often she had given a guest directions to out-of-state locations, and she could only recall one instance in which she directed a guest – who wanted to see the Corvette Museum in Bowling Green, Kentucky – to the interstate.  (*Id.*)

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the

12

truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

Under §§ 206 and 207 of the FLSA, an employer is required to pay a minimum wage and overtime pay to any employee "who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." As discussed above, the court has already ruled that the plaintiffs are not entitled to enterprise coverage or to individual coverage – in so far as individual coverage is premised either on "the production of goods for commerce" or on the plaintiffs' housekeeping and maintenance duties – under the FLSA. The court turns, therefore, to the sole remaining question of whether the plaintiffs were "engaged in commerce" when they worked at the Motel's front desk and, thereby, were covered as individuals under the FLSA.

The court begins by noting that, in passing the FLSA, Congress intended to regulate only activities that actually constitute interstate commerce; it did not intend to regulate activities that merely affect that commerce. *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943). An employee is, therefore, "engaged in commerce" when his activities are "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." *Usery v. Yates*, 565 F.2d 93, 96 (6th Cir. 1977) (quoting *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 212 (1959)). Or, as more

13

recently and granularly articulated by the Eleventh Circuit, an individual is "engaged in commerce" within the meaning of the FLSA when he "directly participat[es] in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). When considering whether an individual is "engaged in commerce," it is important to note that "[t]he nature of the employer's business is not determinative, because . . . the application of the [FLSA] depends upon the character of the employees' activities." *Overstreet v. N. Shore Corp.*, 318 U.S. 125, 132 (1943).

After reviewing the plaintiffs' deposition testimony, which was not available when this court denied the defendants' initial Motion for Summary Judgment, the court concludes that the plaintiffs have failed to present sufficient evidence for a reasonable trier of fact to find that the plaintiffs "engaged in commerce" in carrying out their front desk duties. Accordingly, the plaintiffs are not covered by the FLSA as a matter of law.

First, in working at the front desk of the Motel, the plaintiffs did not "work[] for an instrumentality of interstate commerce," which is typically understood as being a means of transportation or communication between the states. *See, e.g.*, *Thorne*, 448 F.3d at 1266. Department of Labor regulations reinforce this understanding by describing an "instrumentality of commerce" – as used in the FLSA – as a "fixed or movable facilit[y] on which the flow of interstate and foreign commerce depends," such as a railroad, a highway, lines for telephone or electronic transmissions, rivers and streams, or an airport (among others). 29 C.F.R. § 776.11. Nowhere in these regulations is a hotel, motel, or similar provider of services categorically

14

identified as an "instrumentality of interstate commerce." Nor have the plaintiffs adduced any evidence or advanced any argument demonstrating that the flow of interstate commerce "depends" on any motel, let alone on a motel which, like the Motel here, draws "[m]ost" of its clientele from within its own state.

Furthermore, the plaintiffs have cited to no caselaw establishing that a motel is an "instrumentality of interstate commerce" for purposes of the FLSA, nor have they distinguished cases cited by the defendants that demonstrate that an employee is not covered by the FLSA by sheer dint of working at such a business. *See, e.g.*, *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829–30 (5th Cir. 2007) (concluding that a motel employee who acted as janitor, security guard, and driver for motel guests was not covered under the FLSA). Rather, the plaintiffs rely on Supreme Court precedent holding that hotels are "enterprises having a direct and substantial relation to the interstate flow of goods and people" and are thus within Congress' power to regulate under the *Commerce Clause*. (Docket No. 62, p. 6 (quoting *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 250 (1964)).) This argument ignores, however, the fact that Congress's power to regulate commerce pursuant to the Commerce Clause is broader than the coverage afforded by the FLSA, because "Congress, by excluding from the [FLSA]'s coverage employees whose activities merely 'affect commerce,' indicated its intent *not* to make the scope of the [FLSA] coextensive with its power to regulate commerce." *Mitchell*, 358 U.S. at 211 (emphasis added). Cases regarding the applicability of the Commerce Clause to hotels are not, therefore, particularly relevant when determining whether a plaintiff is "engaged in commerce" for purposes of the FLSA.

Second, the plaintiffs have not put forth sufficient evidence to find that they "regular[ly] and recurrent[ly]" used instrumentalities of interstate commerce in the course of their work at the

15

front desk of the Motel. *Thorne*, 448 F.3d at 1266; *see also* 29 C.F.R. § 776.10 (stating that an employee is "engaged in commerce" for purposes of the FLSA when using "the mails and other channels of [interstate] communication" is "a regular and recurrent part of his duties"). The plaintiffs initially stated in their declarations that they "frequently" used multiple instrumentalities of interstate commerce – including the telephone, the mail, and the electronic infrastructure necessary to process credit card transactions – in their work at the Motel. (Docket No. 35 ¶ 2; Docket No. 36 ¶ 2.) As is now clear from the plaintiffs' deposition testimony, however, the plaintiffs merely (1) answered the telephone and transferred calls to guests without ever initiating calls on the Motel's behalf; (2) accepted packages and mail from carriers without ever sending mail on the Motel's behalf; and (3) processed, at most, four to five credit card transactions per week. Furthermore, the plaintiffs never used the telephone or mail to arrange reservations for lodging, transportation, or other services for any guest. This new information regarding the plaintiffs' activities while working at the front desk of the Motel demonstrates that those activities are insufficient, as a matter of law, to merit individual coverage under the FLSA.

The plaintiffs failed to demonstrate that any of these activities brought them into contact with an out-of-state person or entity and, therefore, with interstate commerce. The plaintiffs failed to introduce any evidence indicating how many, if any, of the telephone calls and mail that they received came from out-of-state. Similarly, they failed to introduce any evidence indicating how many, if any, of the credit card transactions that they processed involved out-of-state guests, processors, or banks. This failure to demonstrate that they came into contact with any out-of-state person or entity is, on its own, sufficient to establish that the plaintiffs were not involved in *interstate* commerce as a matter of law. *See, e.g.*, *Lehman v. Teamsters Retiree Hous. of Janesville, Wis., Inc.*, No. 09-cv-288, 2010 WL 1729880, at *4 (W.D. Wis. Apr. 27, 2010)

16

(noting that the plaintiff had "failed to adduce any evidence indicating how many of the[] banks [with which she dealt], if any, were located out of state" and, therefore, "cannot show that she was engaged in interstate commerce"). If the plaintiffs cannot demonstrate that they were involved in any interstate commerce, the court cannot conclude that they were "engaged in commerce" within the meaning of the FLSA.

Even, however, if the court infers that, because some of the Motel's guests were from outside of Tennessee, some of the telephone calls and mail that the plaintiffs received likely originated out of state and some of the credit card transactions they processed likely involved out-of-state entities, the plaintiffs' activities as described in their depositions do not, as a matter of law, constitute "regular and recurrent" use of instrumentalities of interstate commerce. Evidence that an employee "*sometimes* engaged in an activity that can be considered interstate commerce, such as bank transactions or mail delivery, is not sufficient" to show that an employee regularly and recurrently used instrumentalities of interstate commerce in the course of their work. *Owusu v. Corona Tire Shop, Inc.*, No. 09-cv-3744, 2013 WL 1680861, at *4 (E.D.N.Y. Apr. 17, 2013) (emphasis added). For example, "simply receiving mail and phone calls addressed to a business on occasion from another state," as the plaintiffs did here, is not engaging in commerce within the meaning of the FLSA. *Aguilar v. LR Coin Laundromat, Inc.*, No. RDB-11-02352, 2012 WL 1569552, at *6 (D. Md. Mar. 2, 2012).[7] Furthermore, processing

---

[7] In their Response, the plaintiffs argue that they are similar to the plaintiff hotel employee in *Jiao v. Chen*, No. 03 Civ. 0165, 2007 WL 4944767, at *9 (S.D.N.Y. Mar. 30, 2007), who was found to have been "engaged in commerce" for purposes of the FLSA. In making this argument, however, the plaintiffs ignore a critical difference between themselves and the *Jiao* plaintiff, who the Southern District of New York concluded was a part of his employer's interstate activities because he "t[ook] reservations [over the phone] on a regular basis, from guests traveling from out-of-state as well as outside the country." *Id.* The plaintiffs have

17

credit card transactions "at most once or twice a day," as the plaintiffs did here, is not sufficient to place the plaintiffs "within the ambit of the FLSA's coverage." *Owusu*, 2013 WL 1680861, at *4; *accord Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 526 (D. Md. 2006) (holding that a waitress's "communications with vendors and processing of credit card payments" did not bring her claim "within the ambit of the FLSA"). The plaintiffs' work at the front desk, as described in their depositions, reveals nothing more than the incidental use of methods of interstate communication and is, therefore, insufficient to merit coverage under the FLSA.

Finally, the plaintiffs argue that they "engaged in commerce" because they "service[d] and assist[ed]" out-of-state guests. (Docket No. 62, p. 7.) Other than the plaintiffs' activities relating to answering the telephone and processing credit card transactions – which the court has already determined are not sufficient to find that the plaintiffs "engaged in commerce" – the primary service that the plaintiffs argue they provided to guests is the provision of directions to local stores and restaurants. The plaintiffs' mere contact with, and provision of services to, interstate travelers is not, as a matter of law, sufficient to transform this otherwise local activity into activity that qualifies as engaging in interstate commerce for the purposes of the FLSA. *See, e.g.*, *Sobrinio*, 474 F.3d at 829–30; *Russell*, 430 F. Supp. 2d at 526.

Based on the evidence that is now in the record, the court concludes that there is not sufficient evidence – as a matter of law – to support the inference that, in working at the Motel front desk, the plaintiffs were "engaged in commerce" within the meaning of the FLSA. The plaintiffs, therefore, have failed to demonstrate that they are employees who are covered by the minimum wage and overtime provisions of the FLSA and, accordingly, the court will grant the defendants' Renewed Motion for Summary Judgment.

---

conceded that they never took reservations over the phone or initiated any call on behalf of the Motel.

18

## **CONCLUSION**

For the reasons discussed herein, the Renewed Motion for Summary Judgment filed by the defendants will be granted.

An appropriate order will enter.

*[signature]*

ALETA A. TRAUGER
United States District Judge